THOMAS H. SHELBY'S EX'RS *v.* MARY P. SHELBY, ET AL.

**Compromise of Claim.**

> One not a surety against whom a claim of $16,000 is made jointly with others, who purchases his peace by way of compromise for a less amount, and who receives certain collaterals from others liable on such original claim, cannot be permitted to hold the same and pay himself out of them at the expense of the rightful owner.

APPEAL FROM FAYETTE CIRCUIT COURT.

November 23, 1877.

OPINION BY JUDGE PRYOR:

We are not disposed to controvert the legal propositions assumed by counsel for the appellant in his petition for a rehearing, and if the case is made to rest upon the law and facts, as presented by counsel, a rehearing should be granted.

Counsel, we think, has misconstrued the facts, as well as the opinion delivered, and the result is that the legal views presented can not well be applied to the case before us. The primary object of the trust was to secure the two Mary Pindell Shelbys. Mat Shelby was not a surety on James Shelby's bond, and if the object was to secure Mat Shelby in preference to the Missouri beneficiary or the Mary P. Shelby in Kentucky the assignment would have been written so as to express the plain intention of the assignee. "The notes and choses in action, etc., were to be held by Thomas Shelby as trustee for the benefit of my said wards;" and this trust estate; so far as the Kentucky ward was interested in it, was a protection to the surety, as much so as it would have been at that time if paid

over to the ward, if she had been in the condition to receive it. It was in effect so much money placed in Thomas Shelby's hands to be held by him in trust and applied to the payment of the debt owing by him to his ward. So the attempt to secure the ward was in effect securing the surety.

Prior to the creation of this trust in February, 1858, Thomas Shelby, by motion in the Fayette county court, required Isaac Shelby, the guardian, to execute another bond, and this was done, upon which Richard Pendell became the surety. In the year 1860 the ward instituted an action on both of the bonds of Isaac Shelby, claiming that there was $16,000 or more due her by her guardian, and that Thomas Shelby was not released by the execution of the bond upon which Pendell was bound as surety. Negotiations were entered into between the parties, when it was finally agreed between Mary Pindell's guardian and Thomas Shelby that the latter should be released from all liability upon the payment of $6,200, for which sum Thomas Shelby gave his notes, that were afterwards paid. In that suit this order was entered: "That Thomas Shelby having paid Styles, the guardian, the sum of $6,200, which in the judgment rendered herein June 13, 1862, was claimed to be due by Thomas Shelby, and which in said judgment was reserved for future adjudication, said Thomas Shelby is now released," and a credit was accordingly entered on the $16,000 for the amount paid by Thomas Shelby, and the latter released from all liability as surety.

In November, 1862, Mary Shelby instituted another action against Isaac Shelby and Pindell, to which Thomas Shelby was made a party, in which he is called on to state what notes, etc., were placed in his hands for the protection of the ward. To this action a response is filed by Mat Shelby, in which he files the notes, or gives a list of them, and further says that he was released by the order of the county court; that he had given his notes to her guardian for $6,200, in full discharge of his obligation on the bond, and that the notes were paid; further that, to secure him against loss, Isaac Shelby deposited, at the banking house of Grinstead & Bradley, papers, etc., for his protection; that it was Isaac's design in pursuance of a promise made to protect him by this means; and that after the paper had been left at Grinstead's, Isaac told him he had executed it for that purpose, and that if it failed to do this it was a mistake and should be corrected, etc.

The assignment speaks for itself, and clearly shows that it was intended to protect the wards and at the same time protect the surety.

The primary object was to secure the wards in the amount he was owing them. This is manifest from the paper, nor do we understand this position to be controverted by counsel in his petition.

It is, however, insisted that the whole of the assets belonging to Mary Shelby is applied to the debt for which Pindell is bound as surety, and no part of it for the debt for which Thomas Shelby was bound as surety. The case of *Moore v. Moberly*, 7 B. Mon. 299, is relied on to support the position taken, where it was held that all the mortgaged effects should be applied pro rata to all the debts. It is made certain from the proof in this case that Mat Shelby compromised the claim against him for the $16,000 by the payment of $6,200. He does not occupy the position of surety, nor is he entitled to the rights of a surety by reason of that payment. He may have supposed when he made the compromise that he had the right to indemnify himself out of the assigned notes, and no doubt made it under that belief. The contents of the paper he had not examined, and, thinking that the writing was for his individual benefit, made the settlement.

He was not induced to this action by the ward or her guardian, for the reason that at the time the compromise was made, guardian, ward and attorney were all ignorant of the fact that the assignment had been made. The case is simply this: A claim is absolute against Mat Shelby for $16,000. He proposes to pay only $6,200 of the sum if the parties will release him. The proposition is accepted and the money paid, and now it is argued that the money was paid as surety, and the surety entitled to substitution before the principal debt, about which the compromise is made, is paid; that the ward, before the entire debt is paid her, about which the compromise was affected, must indemnify Thomas Shelby in whole or in part out of a fund set apart for the payment of the original liability. If the ward is now compelled to pay Thomas Shelby out of her own means, or the trust fund set apart for her, the surety loses nothing; or if the surety is entitled to a pro rata distribution of this fund, the surety can be substituted to the rights of the ward before the ward's debt is satisfied. The judgment in the first action against Mat Shelby does not evidence an agreement by which this $6,200 was to be paid out of the trust fund, and it could not, for the reason that these appellees, or their former guardians, knew nothing of it at the time, and Mat Shelby supposed it was for his individual benefit.

It is said in the petition for a rehearing that in the opinion it is held "that the plan of Isaac to indemnify his surety was to provide

for the payment of the debt for which the surety was bound. Yet the strange result of the judgment of the circuit court, confirmed by the opinion of this court, is that Thomas Shelby alone, of all the parties, creditors and sureties, fails to receive any benefit whatever from the assignment."

This is the result of the conclusion reached, and the reason that Thomas Shelby is not protected is that he has bought his peace. He says, "I will give you $6,200 if you will release me from your claim I am responsible for." The proposition is accepted and the money paid, and now it is claimed that the chancellor has lost sight of the equitable rights of the appellant because he refuses to make the ward indemnify the party who was once surety, and that before the ward has been paid the debt from the payment of which the appellant was released. A suggestion from the eminent counsel of the appellants upon such questions is always entitled to much consideration, but upon a careful review of the case we find nothing to induce a reconsideration of the opinion delivered. (See original opinion in this volume.)

Petition *overruled.*

*Kinkead & Duvall, M. C. Johnson, R. A. Buckner,* for appellants.
*Breckinridge & Buckner, J. O. Harrison, J. B. Houston,* for appellees.